## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **ROVER PIPELINE LLC,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:19-cv-4698** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **AMY M. ZWICK,** *et al.*, | : | **Magistrate Judge Jolson** |
| | : | |
| **Defendants.** | : | |

## <u>OPINION AND ORDER</u>

This matter comes before this Court on several of the parties' motions, chief among these being their respective Motions for Summary Judgment. This Court also considers Defendants' Motion to Dismiss the Second Amended Complaint and Plaintiff's Motion to Strike.

Given the following analysis, Plaintiff's Motion for Summary Judgment (ECF No. 68) is **DENIED**, Defendants' Motion for Summary Judgment (ECF No. 69) is **GRANTED in part and DENIED in part**, and this case is hereby **REMANDED to the Monroe County Common Pleas Court** for the resolution of Plaintiffs' state law claims. Given this disposition, Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 81) and Plaintiff's Motion to Strike (ECF No. 83) are **DENIED as moot**.

## I. BACKGROUND

### A. Factual Background

Plaintiff Rover Pipeline LLC ("Rover") is an interstate natural gas pipeline company, registered in Delaware, doing business in Ohio, West Virginia, Pennsylvania, and Michigan. (ECF No. 80 at ¶¶ 7–8). In February 2017, Rover was issued a Certificate of Public Convenience and Necessity by the Federal Energy Regulatory Commission ("FERC") "to construct, operate, and

maintain an interstate natural gas pipeline system . . . traversing through" numerous Ohio counties as well as several in West Virginia, Pennsylvania and Michigan (the "Rover Project").[1] (*Id.*, ¶ 1). The Rover Project "involves numerous stakeholders, including gas producers and shippers, landowners, consumers, as well as numerous governmental agencies . . . ," including those of each county though which the pipeline system traverses. (*Id.*, ¶ 20). One of those counties, as relevant to this case, is Monroe County, Ohio.

At the outset of the project, Plaintiff met with the Monroe County Engineer[2] regarding certain hauling and crossing permits. The office, however, allegedly refused to issue those permits until Plaintiff signed the County's Road Use Maintenance Agreement ("RUMA"). (*Id.*, ¶ 22). A RUMA is an agreement between a local government and private energy developer to repair and maintain roadways damaged or degraded by the traffic associated with energy extraction/delivery. (ECF No 69 at 2). These agreements are standard. In fact, Rover entered RUMAs with a dozen counties on this project alone. (*Id.*; *see also* ECF No. 60 at 12). Moreover, as part of its FERC application, Rover submitted a "Traffic Mitigation Plan," in which it promised to "enter [] [RUMAs] with all state, county, and municipal regulatory entities to ensure that the roadways utilized during construction of the Project are returned to [] as good as or better condition than they were prior to construction." (ECF No. 69-5 at 7). While Rover ultimately signed Monroe County's RUMA, it maintains it did so under duress, only to keep the project on schedule. (ECF No. 80 at ¶ 29).

---

[1] The Rover Project consists of "approximately 713 miles of new 24' to 42' diameter natural gas pipelines and appurtenant facilities . . . that include approximately 10 new compressor stations, 17 new meter stations, 77 mainline valves, and 11 pig launcher and receiver facilities, with a total system capacity of up to 3.25 billion cubic feet per day of natural gas . . . " (ECF No. 80 at ¶ 1). Rover estimates the Project "represents an approximate $4.2 billion investment of private funds for public infrastructure under the Natural Gas Act." (*Id.*, ¶ 2).
[2] At this time, the position of Monroe County Engineer was held by Lonnie Tustin. (*Id.*, ¶ 22). Mr. Tustin is no longer the Monroe County Engineer and is not a party to this suit. Currently, and at all other relevant times, Defendant Amy M. Zwick held the position. (*Id.*).

In fall 2017, Defendant County Engineer Amy Zwick determined four roads had allegedly become excessively damaged due to Rover's construction activities. (ECF No. 69 at 2). Defendant Zwick represents she repeatedly communicated this to Rover and the other pipeline companies operating in the area; however, no plans for repairs were made. (*Id*.). As a result, on November 7, 2017, Defendant Zwick, acting on the advice of the Monroe County Prosecuting Attorney, drafted and delivered a cease-work order to Rover, instructing it immediately to stop all construction activities on these four roads. (ECF No. 80 at ¶ 42). In taking this action, Defendant Zwick was relying on her interpretation of the last sentence of the following clause in the RUMA:

> If during the pipeline construction, road damage becomes *excessive* in nature, *as reasonably determined by the County or Township*, the applicant will make additional improvements to strengthen the road base and surface immediately upon written notice from the County Engineer or Township Trustees. *All work accessed by said road will cease until repairs are done to correct the problem*.

(ECF No. 80-1 at 3) (emphasis added). Believing the cease-work order was "unlawful," Rover disregarded the directive and continued its work.[3] (ECF No. 68 at 6). The next day, at the direction of Ms. Zwick, the Monroe County Oil and Gas Coordinator and Highway Supervisor, Brian Kress, traveled to the relevant worksites to provide a copy of the cease-work order. (ECF No. 69 at 11). As no other employee of the Engineer's Office was available to accompany Mr. Kress, the Office asked the Monroe County Sheriff's Office to have a deputy accompany him. (*Id*.). That Deputy, Defendant Russell Blamble, was told he was simply there to "keep the peace." (*Id*.).

Deputy Blamble and Mr. Kress traveled[4] to four worksites along the roads identified in the cease-work order: the Moore Ridge Road site; Ozark Eddy Bridge Road site; Headley Ridge Road site; and the Boltz Hill Road site. (*Id*.). Two of these sites, Moore Ridge Road and Headley Ridge

---

[3] Plaintiff represents it also continued working to avoid non-compliance with its FERC obligations and construction standby costs nearing one-hundred thousand dollars per day. (ECF No 68 at 6).
[4] Deputy Blamble and Mr. Kress drove in separate vehicles. (*See* ECF No. 69-2 at ¶ 16).

Road, were unoccupied. (*Id*. at 11–12). At the Ozark Eddy Bridge site, Mr. Kress spoke with a foreman and informed him the workers were to cease work and leave the site. (*Id*.). While the exact conversations between Deputy Blamble, Mr. Kress and the workers are somewhat disputed, nobody was arrested or cited with any offense. (*Id*.). Moreover, these workers were all contractors, not Rover employees. (*Id*. at 12). Lastly, Deputy Blamble and Mr. Kress travelled to the Boltz Hill Road site and similarly distributed the cease-work order, clearing that site. (*Id*.; ECF No. 69-2 at ¶ 16). This site, however, was occupied only by workers for Columbia Leach Xpress; there were no Rover employees or contractors at this site. (*Id*.).

After Rover filed suit, and this Court ruled on two motions for injunctive relief, the Rover Project was completed. Now all that remains is for Rover to conduct final remediation activities in a few remaining sites in Monroe County. (*Id*., ¶¶ 30, 31). Thus far, Rover represents it has paid more than five million dollars to satisfy the County's road damage claims. (*Id*., ¶ 35). Furthermore, it maintains the stand-by costs incurred during the time its contractors and agents were barred from use of the public roads or entering onto its own private property was $303,196.11. (*Id*., ¶ 75).

### B.  Procedural Background

Immediately after the cease-work order was issued, Plaintiff filed suit in this Court alleging various constitutional and state law claims related to the cease-work order and the RUMA. (*See Rover Pipeline LLC v. Amy Zwick, et. al.*, Case No. 2:17-cv-988). Plaintiff also requested a Temporary Restraining Order ("TRO"), seeking to enjoin Defendants from interfering with or otherwise obstructing it from accessing and/or driving on public roads within Monroe County and further to enjoin Defendants from forcibly removing, or otherwise causing to be removed, Rover from its own private property. (*Id*. at ECF No. 4). After reviewing the motion and hearing the arguments of counsel at the Local Rule 65.1 conference, this Court granted Plaintiff's TRO,

holding Rover had sufficiently satisfied the requisite immediacy and irreparability of harm requirements. (*Id*. at ECF No. 7). That TRO was to remain in place until the Preliminary Injunction hearing and Rover was required to post a bond of $250,000.[5] (*Id*.). Before the hearing could be held, however, the parties attended mediation to attempt to resolve the underlying dispute. (ECF No. 68 at 2). At mediation, Rover agreed to complete sixty-three emergency repairs alleged by Defendant Zwick, and Rover was promised unobstructed use of the County's roads for the remainder of its Project. (*Id*.). Pursuant to the parties' agreement, Rover voluntarily dismissed its claims against the County without prejudice. (2:17-cv-988, at ECF No. 33). That agreement states this Court shall retain jurisdiction over it and all other matters contemplated in the agreement, including any disputes related to the RUMA. (*Id*.).

In October 2019, Defendants moved for a TRO, seeking to enforce the terms of the Settlement Agreement and requiring Rover to furnish an additional $350,000 for repairs to Moore Ridge Road. (*Id*. at ECF No. 34). Defendants represented Rover refused to pay for the road repairs as previously agreed, and the County lacked the resources to repair it. (*Id*.). Moreover, Defendants asserted the repairs needed to happen immediately, as the road was rapidly deteriorating, and winter was quickly approaching. (*Id*.). After reviewing the motion and hearing the arguments of counsel at the Local Rule 65.1 conference, this Court granted Defendants' Motion. (*See id*. at ECF No. 37). This Court ordered Rover to pay $350,000, in addition to the $250,000 already contributed, towards the repairs of Moore Ridge Road and to engage a contractor to complete those repairs. (*Id*.). This Court did, however, recognize Rover's right to seek partial or full repayment of these funds. (*Id*.).

---

[5] That bond obligation was later released, as Rover had "satisfied all terms of the bond." (*See Rover Pipeline LLC v. Amy Zwick, et. al.*, Case No. 2:17-cv-988 at ECF No. 43).

On October 23, 2019, Rover filed suit against Defendants Amy M. Zwick, Brian Kress, Sheriff Charles R. Black, an Unknown Monroe County Deputy as well as the Monroe County Sheriff's Department and Engineer's Department. (*See* ECF No. 1). Rover alleged various constitutional and state law claims, including multiple civil rights claims related to the cease-work order. (*See generally id*.). It sought compensatory and putative damages as well as declaratory relief. (*Id*.). On December 23, 2019, Defendants moved to dismiss the Complaint. (ECF No. 10). That Motion, however, was ultimately denied as moot (*see* ECF No. 33), as Plaintiff was granted leave to amend its Complaint on June 3, 2020 (*see* ECF Nos. 29, 30). The First Amended Complaint added Deputy Russel Blamble as a defendant and included two new state law breach of contract claims. (*See generally* ECF No. 30). Rather than renewing their Motion to Dismiss, Defendants filed an Answer on July 13, 2020. (ECF No. 31).

The parties progressed with discovery, and on April 23, 2021, each moved for summary judgment (*see* ECF Nos. 68, 69). While those Motions were being briefed, Plaintiff again moved to amend its Complaint, this time to add Monroe County as a defendant. (*See* ECF No. 73). Plaintiff represented it affirmatively, if indirectly, included claims against the County in its Complaint and accordingly, did not believe amendment was necessary. (*Id*.). The Magistrate Judge determined amendment was appropriate, given the good cause shown and a lack of prejudice to Defendants. (ECF No. 79). Plaintiff then filed a Second Amended Complaint, this time explicitly naming Monroe County as a Defendant, and clarifying the claims against the existing Defendants as official capacity claims. (*See* ECF Nos. 79, 80).

The parties' respective Motions for Summary Judgment were subsequently briefed and are now ripe for review. During that briefing Defendants moved to dismiss the Second Amended Complaint (ECF No. 81) and Plaintiff moved to strike the report, opinions, and testimony of

Defendant, and purported expert, Amy Zwick (*see* ECF No. 83). Those Motions too are now ripe, and this Court resolves them below.

## II.  STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in the non-moving party's favor. *U.S. Sec. & Exch. Comm'n v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50.

On a motion for summary judgment, the initial burden rests upon the movant to present the Court with law and argument in support of its motion as well as identifying the relevant portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of*

*Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (finding that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury"). In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "views factual evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). Self-serving affidavits alone, however, are not enough to create an issue of fact sufficient to survive summary judgment. *Johnson v. Wash. Cnty. Career Ctr.*, 982 F. Supp. 2d 779, 788 (S.D. Ohio 2013). "The mere existence of a scintilla of evidence to support [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

The Court's standard of review does not change when the parties file cross-motions for summary judgment. *See Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) ("[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."). Thus, in reviewing cross-motions for summary judgment, a court must still "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

### III.  LAW & ANALYSIS

Each party claims it is entitled to summary judgement. Plaintiff, for its part, argues summary judgment is appropriate given the constitutional violations stemming from the cease-work order as well as the accompanying violations of the RUMA. (*See generally* ECF No. 68). Defendants, meanwhile, seek summary judgment on all claims brought against them, asserting no constitutional rights were violated and the RUMA constitutes an enforceable contract.

Alternatively, should this Court them summary judgment on Plaintiff's federal law claims, Defendants argue this court should not exercise supplemental jurisdiction over Rover's state-law contract claims and remand the case to state court. (*See generally* ECF No. 58). This Court begins with Plaintiff's Motion.

### A.  Plaintiff's Motion for Summary Judgment

Plaintiff asserts Defendants violated its civil rights under 42 U.S.C. § 1983 and, moreover, that its uncontroverted expert reports show Plaintiff is entitled to reimbursement for all expenditures under the RUMA. (*See generally* ECF No. 57). This Court begins with Plaintiff's federal law claims, as it exercises only supplemental jurisdiction over its state law claims. First, however, this Court addresses a prefatory point on the adequacy of Plaintiff's Motion.

While Plaintiff's Second Amended Complaint alleges a wide variety of federal claims, it seems to have waived some of these claims, as several of them were not argued in its Motion for Summary Judgment.[6] *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). While Plaintiff more competently argues some of these claims in its Reply (ECF No. 82) and its Response to Defendants' Motion for Summary Judgment (ECF No. 72), neither is the appropriate place to do so. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (recognizing that a party may not raise new arguments in a reply brief).

Despite these omissions, this Court finds that all Plaintiff's federal claims have been sufficiently addressed in the parties' briefing. Moreover, this Court also heard testimony on each of these claims during oral argument on the parties' cross Motions for Summary Judgment. (*See* ECF Nos. 92, 93). Accordingly, particularly given the "strong preference for trials on the merits"

---

[6] Specifically, Plaintiff's Motion contains no discussion of (1) substantive due process; (2) Fourth Amendment unlawful search and seizure, (3) Fifth Amendment takings, or (4) *Monell* liability. (*See generally* ECF No. 68).

consistently articulated by the United States Court of Appeals for the Sixth Circuit, *see Shepard Claims Service v. William Darrah & Associates*, 796 F.2d 190, 193 (1986), this Court finds Plaintiff has not waived these claims and shall consider them below.

*1. Procedural Due Process*

Beginning first with procedural due process, Plaintiff alleges, under 28 U.S.C. § 1983, that Defendants deprived it of its fundamental property rights, freedom of movement, and right to make a livelihood, without due process of law. (ECF No. 68 at 15). This claim, as with all Plaintiff's federal claims, stems from the cease-work order and the removal of construction crews from Plaintiff's construction sites. (*See generally id.*). Plaintiff claims it has satisfied the first element of a procedural due process claim as Defendants' actions implicated three separate fundamental rights: the right to own and peacefully enjoy property, the right to move freely in public space, and the freedom to work and pursue economic opportunities. (ECF No. 68 at 13 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41 (1985))). Each of these rights was infringed upon, says Plaintiff, when its agents and contractors were directed to leave its own private property and remain away until the agents and contractors had received express permission to return. (*Id.*). Plaintiff also alleges its contractors and agents were barred from using their own vehicles to earn a livelihood by traveling to their place of employment. (*Id.* at 14). Plaintiff asserts it has satisfied the second element of a procedural due process claim, as it was afforded neither adequate notice nor a hearing before its agents were removed from its private property and barred from using public roadways. (*Id.*).

As a threshold matter, Defendants responded that they are entitled to qualified immunity from Rover's alleged constitutional claims, as the alleged conduct does not violate any clearly

established rights viewed under the applicable standard.[7] Regarding Plaintiff's procedural due process claim specifically, Defendants argue that because this claim is based on a contractual dispute—the validity of the RUMA—the only process to which Rover is due is a post-deprivation suit for breach of contract. (ECF No. 74 at 26–29 (citing *Rockland Vending Corp. v. Creen*, Case No. 07-CV-6268, 2009 U.S. Dist. LEXIS 68323 (S.D.N.Y. Aug. 4, 2009))). Moreover, Defendants assert this post-deprivation remedy is sufficient to satisfy due process given that Rover does not allege it could not be made whole via a suit for damages, nor is there any evidence of record from which a reasonable jury could find otherwise. (*Id*. at 29). As Rover was able timely to commence this action, Defendants argue its due process rights were not violated. (*Id*.). Here, Defendants emphasize the County's important interest in enforcing its contractual rights and to maintain the safety of its roadways. (*Id*.). Lastly, Defendants argue Rover cannot maintain any of its constitutional claims on behalf of its employees, agents and contractors, as § 1983 claims are cognizable only by the party whose civil rights are violated. (*Id*. at 29–30 (citing *Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984))).

In reply, Plaintiff argues its injury was the result of an official policy, custom, and/or procedure of the Monroe County Engineer and, as a result, it is not required to establish the absence of alternative remedies to succeed on this claim. (ECF No. 82 at 19–22). To the first point, Plaintiff maintains the County's practice of requiring companies to sign the RUMA before they are permitted to begin a project, constitutes an official custom. (*Id*. at 19–20). Moreover, says Plaintiff, the alleged post-deprivation remedy—a breach of contract suit—is insufficient. (*Id*. at 22).

---

[7] Notably, Plaintiff does not argue qualified immunity in its Motion despite Defendants asserting the affirmative defense in their Answer. (*See* ECF No. 31 at ¶ 91; *see also Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1999) (holding that once the defense of qualified immunity is asserted, the burden shifts to the plaintiff to show defendants are not entitled to qualified immunity)). This Court, however, does not wade into the brackish waters of qualified immunity in evaluating Plaintiff's constitutional claims as it finds substantial other grounds to grant Defendants' summary judgment on these claims. (*See infra* at Part III(B)).

Procedural due process requires the state provide a person with notice and an opportunity to be heard before depriving them of a property or liberty interest. *Warren v. City of Athens, Ohio*, 411 F.3d 697, 707–08 (6th Cir. 2005). There are two types of procedural due process violations actionable under § 1983: (1) deprivations stemming from an "established state procedure," and (2) deprivations pursuant to a "random and unauthorized act." *Mertik v. Blalock*, 983 F.2d 1353, 64 (6th Cir. 1993). Under the latter, post-deprivation remedies are sufficient to satisfy due process as "the Constitution does not require the state to do the impossible and predict when the [deprivation] will occur . . . ." *See DiLuzio v. Vill. of Yorkville, Ohio*, No. 2:11-CV-1102, 2014 WL 11515878 (S.D. Ohio Sept. 8, 2014), *aff'd*, 796 F.3d 604 (6th Cir. 2015). In cases involving a due process challenge to deprivations resulting from an established state procedure, however, a plaintiff need not show the inadequacy of state remedies because it is generally "practical and feasible for the state to provide pre-deprivation process." *Mertik*, 983 F.2d at 1364.

As detailed more below, it is not readily apparent which sort is at issue here—with Plaintiff asserting "established state procedure" and Defendants claiming "random unauthorized act." Under either framework, however, where the state alleges there was a "necessity of quick action" the plaintiff must show the inadequacy of state remedies. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986)); *see also Collins v. City of Cleveland*, No. 1:11 CV2221, 2012 WL 5304092 (N.D. Ohio Oct. 24, 2012); *Harris v. City of Akron*, 20 F.3d 1396 (6th Cir. 1994). Even still, this precedent does not conclusively hold "that post-deprivation remedies are adequate to satisfy due process every time a government official invokes an emergency . . . ." *DiLuzio*, 2014 WL 11515878 at * 7. Defendants assert quick action was necessary here, given the County Engineer's determination that the subject roadways

were excessively damaged, requiring immediate repair. (ECF No 74 at 11). Accordingly, Plaintiff must prove the post-deprivation remedy—a breach of contract action—is insufficient.

From the record before it, this Court finds the State, by making available a tort remedy that could adequately redress the loss, has given Plaintiff the process it was due, under the circumstances. *See Zinermon v. Burch*, 494 U.S. 113, 130 (1990). This is particularly the case given that Plaintiff's alleged harm stems largely from contractually created interests. In such a case, a § 1983 action is barred as "the deprivation is a simple breach of contract and there is adequate state breach of contract action available as a remedy." *Ramsey v. Bd. of Educ. of Whitley Cty.*, Ky., 844 F.2d 1268, 1273 (6th Cir. 1988). Moreover, this Court is not convinced by Plaintiff's argument that this remedy is inadequate given the alleged "extreme and intrusive violation[.]" (ECF No. 82 at 22). Rather, a state-law breach of contract action sufficiently affords Rover an opportunity to be heard at a "meaningful time and in a meaningful manner[,]" to recoup both the funds expended repairing the roads and any interim standby costs, regardless of the scope of the deprivation.[8] *See Ramsey*, 844 F.2d at 1273 (citing *San Bernardino Physicians' Servs. Med. Grp., Inc. v. San Bernardino Cty.*, 825 F.2d 1404, 1408 (9th Cir. 1987) ("It is neither workable nor within the intent of [§] 1983 to convert every breach of contract claim against a state into a federal claim.")).

Additionally, Plaintiff maintains there was no necessity for quick action, given the time elapsed between the cease-work order and the repairs being made, as well as the fact that there were no disasters, no road closures, and no emergency vehicle delays during that period. (ECF No. 68 at 27). This, however, is not determinative. While the repairs were not made immediately—due

---

[8] Given the County issued the cease-work order pursuant to its alleged rights under a contract (the RUMA), if Rover can prove the County's actions were in violation of that contract, it can recoup both the funds it expended repairing the County's roads as well as any standby costs incurred.

to the onset of winter—it is ultimately "immaterial whether an emergency actually existed[.]" *Harris*, 20 F.3d at 1401. Defendants "reasonably believed" emergency repairs were necessary and issued the cease work order to ensure those repairs were made. As a result, this Court finds the state provided a meaningful post-deprivation process to determine the propriety of the cease-work decision, and under the circumstances, the requirements of procedural due process were satisfied.

Two final points on procedural due process. First, even if Plaintiff was not required to show the inadequacy of the post-deprivation remedy, this Count is not convinced the RUMA and accompanying cease-work order constitute an "established state procedure." *Cf. Wedgewood Ltd. P'ship I v. Twp. Of Liberty, Ohio*, 610 F.3d 340, 355 (6th Cir. 2010) (holding a township's *enactment* of zoning instructions constituted an "established state procedure") (emphasis added). Moreover, even if the RUMA is considered an "established state procedure," this Court does not necessarily find that such procedure itself violates due process. *See* Ohio Attorney General Op. No. 2012-029 (recognizing a county may enter into a contract with a private company that conducts oil and gas drilling operations, "to have the company improve and repair the county roads it uses"). These misgivings aside, this Court's previous conclusion is determinative and, as a result, Plaintiff's motion for summary judgment on its procedural due process claim is **DENIED**.

## 2. *Substantive Due Process*

Plaintiff argues Defendant Zwick created an arbitrary procedure through which her Office would ignore the causation requirement of the RUMA and threaten to shut down roadways until she received the funds for repairs—irrespective of who caused the damage. (ECF No. 82 at 23). This, maintains Plaintiff, constitutes the type of "arbitrary and capricious" government action the Sixth Circuit has deemed a violation of substantive due process. (*Id.* (citing *Warren*, 411 F.3d at 707–08)). Plaintiff further argues that Defendant Zwick's policy was indiscriminately and

14

inconsistently applied to all oil, gas, and pipeline companies. Moreover, Plaintiff asserts it is entitled to summary judgment as Defendant Zwick had no authority to hold it liable for unattributed damage to Monroe County roadways. (*Id*. at 26).

In response, Defendants argue Plaintiff has waived this claim by not arguing it in its Motion for Summary Judgment. (ECF No. 74 at 22). Accordingly, say Defendants, Plaintiff has not sought summary judgment on these grounds and, therefore, cannot be entitled to it. As Plaintiff did not argue this claim in its opening motion, however, Defendants similarly did not offer any meaningful discussion of this claim in its response brief. As detailed below, however, Defendants do substantively brief this issue in their own motion. (*See infra* at Part III(B)(2)).

Substantive due process claims come in two forms: (1) as a challenge to a law or regulation; or (2) as a challenge to a discretionary action by a government official. *Stroder v. Kentucky Cabinet for Health & Family Servs.*, No. 3:09–CV–00947–H, 2012 WL 967599, at *1 (W.D. Ky. Mar. 21, 2012). Under the latter, as is the case here, a plaintiff must demonstrate: (1) he has a property and/or liberty interest recognized by the U.S. Constitution; and (2) that the government entity took an arbitrary and capricious action "in the strict sense." *Id*. (citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1221 (6th Cir. 1992)). "[I]f any conceivable legitimate governmental interest supports the contested [action], that [action] is not arbitrary and capricious and hence cannot offend the substantive due process norms." *37712, Inc. v. Ohio Dep't of Liquor Control*, 113 F.3d 614 (6th Cir. 1997). Even still, "[n]ot all arbitrary and capricious state action amounts to a violation of substantive due process." *Hussein v. City of Perrysburg*, 617 F.3d 828, 833 (6th Cir. 2010).

Plaintiff does not mention any specific property or liberty interest when discussing its substantive due process claim. (*See generally* ECF Nos. 68, 72, 82). A plaintiff may still, however, sustain a substantive due process claim, regardless of whether a property or liberty interest is at

stake, where governmental action "shocks the conscience." *See Valot v. S.E. Local School Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997); *see also EJS Properties, LLC v. City of Toledo*, 698 F.3d 845 (6th Cir. 2012). The Sixth Circuit Court of Appeals has stated that "[c]onduct shocks the conscience if it violates the decencies of civilized conduct." *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014).

Surely, nothing about Defendants' conduct here includes actions "so 'brutal' and 'offensive' that [they do] not comport with traditional ideas of fair play and decency." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172–73 (1952)). As detailed above, the County had a legitimate reason for temporarily closing Rover's worksite—damage to its roadways from construction vehicles. Furthermore, requiring construction workers to vacate a construction site, temporarily, by no means "shocks the conscience." Ultimately, this Court is convinced by Sixth Circuit precedent that demands "[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process." *See Bell v. Ohio State University*, 351 F.3d 240, 250–51 (6th Cir. 2003); *see also Andreano v. City of Westlake*, 136 F. App'x 865, 872 (6th Cir. 2005) (recognizing that because it is "extremely rare" for a federal court to find a state agency's action offends substantive due process, those court may "dispose of the vast majority of such attacks . . . on summary judgment—thereby ensuring interference by federal courts with local government stays at a salutary minimum"). Accordingly, Plaintiff's motion for summary judgment on its substantive due process claim is **DENIED**.

### 3. *Unlawful Search and Seizure*

Here again, Plaintiff fails to discuss its claim for unlawful search and seizure in its opening Motion. In its reply brief, however, Plaintiff alleges it is entitled to summary judgment on its search

and seizure claim because its workers were removed from its private property against their will, by a show of authority. (ECF No. 82 at 29). Rover maintains Deputy Blamble and Defendant Kress, both state actors, ordered workers to leave Rover's private property through a show of force. (*Id*.). This, says Plaintiff, clearly constitutes a state actor preventing a party from staying at a location they would otherwise have chosen to remain. (*Id*. at 26 (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (2005)). Finally, Plaintiff argues that even without any physical force, these actors displayed the "requisite authority" to constitute an actionable claim for unlawful seizure. (*Id*.). Specifically, Plaintiff highlights that Deputy Blamble was wearing his gun and badge as well as driving a police vehicle. (*Id*.).

Here again, as Plaintiff did not argue this claim in its opening motion, Defendants similarly did not offer any meaningful discussion of this claim in its response brief. They do, however, argue Plaintiff has waived this claim. (ECF No. 74 at 22). Moreover, Defendants argue Plaintiff's Complaint alleges claims for both unlawful search and seizure as well as unlawful arrest and detention, but such claims are "indistinguishable." (*Id*. (citing *United States v. Wall*, 807 F. Supp. 1271, 1274 (E.D. Mich. 1992))). Accordingly, say Defendants, Plaintiff has not sought summary judgment on these grounds and, therefore, cannot be entitled to it. These arguments aside, Defendants also maintain Plaintiff's unlawful search and seizure claim fails as a matter of law, as there was neither a search nor a seizure here. (*Id*. at 13).

The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.[9] U.S. Const. amend. IV. A Fourth Amendment seizure "occurs when there is some meaningful interference with an individual's possessory interests in [his or her] property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Circumstances falling short

---

[9] Plaintiff alleges only that Defendants conducted an unlawful seizure, not an unlawful search. (*See* ECF No. 82 at 29).

of an arrest may constitute a seizure, where an "officer, by means of physical force or show of authority, terminates or restrains [someone's] freedom by movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254–55 (2007). Such a seizure occurs "only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower*, 489 U.S. at 597. Even still, not all government actions are invasive enough to implicate the Fourth Amendment. *United States v. Warshak*, 631 F.3d 266, 284 (6th Cir. 2010). For example, the owner of commercial property, while still afforded protection from unreasonable official entries on that property, has "only a diminished expectation of privacy[.]" *United States v. Wymer*, 40 F. Supp. 3d 933, 938 (N.D. Ohio 2014). Ultimately, a violation of the Fourth Amendment requires an intentional acquisition of physical control. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596 (1989).

Despite Plaintiff's protests otherwise, there was no unlawful restriction here. Each of the workers was simply asked to leave the job site. Mr. Kress and Deputy Blamble were simply there to communicate the cease-work order, not to take into physical custody any person or property. *Widgren*, 429 F.3d at 581. Moreover, no arrests were made, and nobody was detained. As detailed above, this action was supported by the "emergency circumstance" identified by the County and its interpretation of its rights under the RUMA. *Id.* (citing *Artes–Roy v. City of Aspen*, 31 F.3d 958 (10th Cir. 1994) (a building inspector does not violate the Fourth Amendment by entering a residence in a minimal way solely for the purpose of enforcing a stop work order)). Moreover, even were this Court to find that a seizure occurred here, any such seizure was either not "unreasonable" or was *de minimus*.

First, had this Court found, as Plaintiff suggests, that a traditional analysis of seizure yielded no answered, it would then be required to "evaluate the [] seizure under traditional

reasonableness standards by balancing an individual's privacy interests against legitimate governmental interests."[10] *See Wyoming v. Houghton*, 526 U.S. 295, 299–300 (1999); *see also Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 652–53 (1995). Under such an analysis, this Court is convinced that the scale would tip in favor of Defendants. Defendants' interest—maintaining the safety of its roadways and its alleged rights under contract—is legitimate. And, when balancing this interest against Rover's privacy interest, any alleged seizure was reasonable under the totality of the circumstances. Second, any alleged seizure, reasonable or otherwise, was surely *de minimis*. *See Artes–Roy*, 31 F.3d at 960 (building inspector entering a residence to issue a stop-work order constituted a *de minimis* seizure); *United States v. Jacobsen*, 466 U.S. 109, 125, (1984) (destruction of small amount of powder during field test for cocaine constituted a *de minimis* seizure); *United States v. Brignoni–Ponce*, 422 U.S. 873, 880 (1975) (border patrol investigatory stop justified on less than probable cause in part because the intrusion was "modest"). Here, several independent contractors—not Rover employees—were removed from the construction site for a very brief period, based on the County's reasonable emergency determination, and after which they received an adequate post-deprivation remedy.

Given Plaintiff's failure to show Defendants' actions constituted an unlawful seizure, its motion for summary judgment on this claim is **DENIED**.

### 4. *Unlawful arrest/imprisonment*

Next, Plaintiff seeks summary judgment on its § 1983 unlawful arrest/imprisonment claims. Again, Plaintiff did not argue this claim in its Motion for Summary Judgment. In its reply brief, Plaintiff argues it is entitled to summary judgment on this claim as: (1) there was an intent

---

[10] While reasonableness generally requires the obtaining of a judicial warrant, that is only the case where a search or seizure is undertaken by law enforcement officials "to discover evidence of criminal wrongdoing." *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 617 (1989). There is no evidence that Defendant Blamble was investigating criminal wrongdoing when asking the workers to vacate the construction site.

to arrest; (2) under real or pretended authority; (3) accompanied by a constructive seizure; and (4) which was so understood by the person arrested. (ECF No. 82 at 29 (citing *State v. Roby*, 10th Dist. No. 16AP-342, 2017-Ohio-7331, 84 N.E.3d 1102, ¶ 13)). Specifically, Plaintiff alleges the state actor Defendants expressly informed Rover's workers they immediately had to leave Rover's private property under the alleged authority of the cease-work order. (*Id*. at 31). Furthermore, says Plaintiff, these Defendants effected a constructive seizure when they expelled the workers from Rover's property. (*Id*. at 18 (citing *State v. Westover*, 2014-Ohio-1959, 10 N.E.3d 211, 217–18 (recognizing circumstances where a seizure is equivalent to an arrest))). Plaintiff argues that, taken together, these actions entitle it to summary judgment on this claim.

In response, Defendants again argue Plaintiff has waived these claims by not arguing them in its opening motion, and nonetheless, they are duplicative of its unlawful search and seizure claim. (ECF No. 74 at 22–23). Accordingly, say Defendants, Plaintiff has not sought summary judgment on these grounds and, therefore, cannot be entitled to it. These arguments aside, Defendants also maintain this claim fails as a matter of law, as there was no arrest here.[11] (*Id*.).

Unlawful arrest and unlawful imprisonment are related causes of action. *Tucker v. Kroger Co.*, 133 Ohio App.3d 140, 726 N.E.2d 1111, 1115 (1999) (citation omitted). For a Plaintiff to succeed on an unlawful imprisonment claim, he must show he was detained without lawful justification. *Id*.; *Harvey v. Horn*, 33 Ohio App.3d 24, 514 N.E.2d 452, 454 (1986) (ruling a plaintiff claiming false arrest need only show he was detained and the detention was unlawful). A claim for unlawful imprisonment, meanwhile, requires showing: (1) intentional confinement; (2) within a limited area, for an appreciable time; (3) without lawful privilege; and (4) without consent. *Bennett v. Ohio Dep't of Rehab. & Corr.*, 60 Ohio St.3d 107, 573 N.E.2d 633, 636 (1991) (citation

---

[11] As detailed below, Defendants more substantively brief this issue in their own motion. *See infra* at Part III(B)(4).

omitted). Here, as detailed above regarding Plaintiff's claim of unlawful seizure, there was no arrest or detainment—the state merely effected a stop work order, citing emergency concerns and its alleged rights under contract. Regardless of the legitimacy of the contract which allegedly authorized these actions, Plaintiff cannot show there was any unlawful seizure here, constructive, or otherwise. Accordingly, Plaintiff's motion for summary judgment on its unlawful arrest/imprisonment claims is **DENIED**.

### 5.  *Unlawful Taking*

Next, again only in its reply brief, Plaintiff claims its right to access its property is a fundamental property right that was unlawfully taken without just compensation. (ECF No. 72 at 18–20). Accordingly, it is entitled to summary judgment on its unlawful taking claim. (*Id*.). It represents that because property access from a public roadway is a protected property interest which cannot be removed without just compensation, and Defendants blocked such access, there was a taking. (*Id*.). Moreover, because the taking was effected for the purpose of building the County's roadways—a public use—Plaintiff maintains Defendants are liable. (*Id*.).

Defendants do not substantively respond to Plaintiff's alleged takings claim in their response brief, as Plaintiff did not raise this argument in its opening Motion. They do, however, again assert Plaintiff has waived this claim. (ECF No. 74 at 22–23). Defendants also assert, and as more fully argued in their own Motion for Summary Judgment, that Plaintiff's unlawful takings claim fails as a matter of law, as there was no taking, for public use or otherwise. (*Id*.).

"The Sixth Circuit has established a two-part test to evaluate whether a governmental action constitutes a taking of private property without just compensation." *Loc. 860 Laborers' Int'l Union of N. Am., v. Neff*, No. 1:20-CV-02714, 2021 WL 2477021 * 7 (N.D. Ohio June 17, 2021) (citing *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 609 (6th Cir. 2016)). A

reviewing court must first "examine whether the claimant has established a cognizable property interest[,]" and then determine "whether a taking occurred." *Puckett*, 833 F.3d at 609. A taking based on an alleged breach of contract, however can generally "be vindicated through a suit in contract[.]" *Kaminski v. Coulter*, 865 F.3d 339, 349 (6th Cir. 2017).

Upon review of the record, this Court finds that no taking occurred here. Most significantly, this Court is "persuaded by those cases who have concluded that a breach of contract claim does not give rise to a § 1983 constitutional claim." *Preschool Dev., Ltd. v. City of Springboro, Ohio*, No. 1:04-CV-00348, 2005 WL 1038849, * 18 (S.D. Ohio May 4, 2005); *Boston Env't Sanitation Inspectors Ass'n v. City of Boston*, 794 F.2d 12, 13 (1st Cir.1986) ("[A]n alleged breach of contract does not amount to a deprivation of property without due process actionable under section 1983"); *Jimenz v. Almodovar*, 650 F.2d 363, 370 (1st Cir. 1981)("A mere breach of contractual right is not a deprivation of property without constitutional due process of law . . . [o]therwise virtually every controversy involving an alleged breach of contract by a government or a governmental institution or agency or instrumentality would be a constitutional case."). The Sixth Circuit too has echoed this sentiment. *See B & B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766 (6th Cir. 2005) (quoting *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1070 (Fed.Cir.2001) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract. In such instances, interference with such contractual rights generally gives rise to a breach claim not a taking claim." (citations and internal punctuation omitted)).

Here, the cease-work order and the closing of Rover's construction site, is a dispute over the scope of the RUMA, nothing more. Accordingly, the Fifth Amendment cannot grant Plaintiff the relief it seeks. This Court finds Plaintiff's characterization of its claims as civil rights claims is

22

an inappropriate "effort to obscure the claim's true nature." *Id*. Therefore, Plaintiff's motion for summary judgment on its takings claim is **DENIED**.

### 6. Equal Protection

Plaintiff asserts its employees and contractors, who were similarly situated to members of the traveling public and relied upon the County's public roadways, were unlawfully barred from these roadways by Defendants. (ECF No. 68 at 15). In addition to this treatment, says Plaintiff, it has shown there is no rational basis for Defendants' actions. (*Id*.). Plaintiffs argue the only impetus for their expulsion from the job site was to "extort" it into providing the funds to repair the roads. (*Id*.). As a result, Plaintiff claims it has satisfied all the elements of its equal protection claim and is, therefore, entitled to summary judgment.[12]

In response, Defendants maintain that because Plaintiff is not a part of "a particular class or group," it must show that it was treated differently from those similarly situated in all relevant respects. (ECF No. 74 at 31 –32). They assert that Rover has not shown it was treated differently from other natural gas pipeline companies—as all were required to sign the RUMA—so its claim must fail. (*Id*. at 32). Even were this Court to compare Plaintiff's treatment—allegedly being denied access to public roads—with that of the public, Defendants assert such comparison is unsuccessful. (*Id*.). Defendant offers testimony from several sources showing there were no roadblocks, checkpoints or personal vehicle restrictions (*Id*. at 32 (citing (ECF No. 58 at 34 (independent contractor testifying nobody told them they were not allowed to drive on any county roads); ECF No. 59 at 26 (same); ECF No. 61 at 14 (same))). Finally, Defendants argue that even if each either of these two arguments succeeds, Plaintiff has still not shown "intentional and

---

[12] Plaintiff does not address its equal protection claim in its reply brief. (*See generally* ECF No. 82).

arbitrary discrimination." (*Id*. at 33). They assert they have a legitimate purpose for requiring the workers to leave Rover's job site—to ensure the preservation of county roads. (*Id*.).

The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Sixth Circuit has explained that even a "class of one" may bring an equal protection claim when the state has treated them differently from others similarly situated without a rational basis for doing so. *Warren v. City of Athens*, 411 F.3d 697, 710 (6th Cir. 2005). This "rational basis" test "means that courts will not overturn government action 'unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational.'" *Id*. at 711 (alterations original) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000)). This Court has explained that, under the "class of one" theory of equal protection, a plaintiff "may demonstrate that government action lacks a rational basis either by negating every conceivable basis that might support the government action or by showing that the challenged action was motivated by animus or ill-will." *Bench Billboard Co. v. City of Cincinnati*, 717 F.Supp.2d 771, 786 (S.D. Ohio 2010) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton County, Ohio*, 430 F.3d 783, 788 (6th Cir. 2005)).

Two things weigh greatly on this Court's analysis of this issue. First, is the fact that no Rover employee, agent, or contractor was denied access to public roads with their personal vehicles. As detailed above, Defendant offers testimony from multiple Rover contractors working at the site, which all show there were no travel restrictions put in place. While these individuals may not have been able to commute to the job site, that was not because they could not drive there,

24

it was because the work was stopped; there was nowhere to commute. Moreover, even if there was disparate treatment, there was clearly a rational basis for that treatment—to ensure the integrity of the County's roads and to enforce their alleged contractual rights. Surely the former of these two purposes is rationally related the County's interest in protecting its citizenry and its property. Accordingly, Plaintiff's motion for summary judgment on its equal protection claim is **DENIED**.

### 7.  Monell Claim

In *Monell v. Department of Social Services*, the Supreme Court held a municipality may be liable under § 1983 for the unconstitutional acts of its employees if either a municipality's official policy or one of its customs is the source of injury. 436 U.S. 658, 694 (1978). A plaintiff must demonstrate that the official policy or custom in question is the "moving force" behind the constitutional violation; the existence of an official policy or custom cannot be demonstrated by the occurrence of the alleged constitutional violation itself. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). Nonetheless, "[t]here can be no liability under *Monell* without an underlying constitutional violation." *See Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000).

As detailed above, this Court has not found that Defendants violated any of Plaintiff's constitutional rights. Defendants did not violate Plaintiff's civil rights when they issued the cease-work order and required those workers temporarily to vacate the worksite. And there is no evidence that any workers, Plaintiff's or otherwise, were barred from using public roadways. Accordingly, even if Defendant Zwick's actions were supported by official policy or custom, the County "could not be liable under *Monell* because there was no underlying constitutional violation." *See Renz v. Willard Police Dep't*, No. 3:10 CV 202, 2010 WL 3789563, * 3 (N.D. Ohio Sept. 24, 2010); *see also Hunt v. Sycamore Cmty. School Dist. Bd. of Educ.*, 542 F.3d 529 (6th Cir. 2008) (affirming

district court's dismissal of *Monell* claim against local government entity because there was no underlying constitutional violation). Therefore, Plaintiff's motion for summary judgment on its *Monell* claim is **DENIED**.[13]

## B. Defendants' Motion for Summary Judgment

In their Motion for Summary Judgment, Defendants assert that they are entitled to qualified immunity, and that this Court should refuse to exercise supplemental jurisdiction over Plaintiff's state law claims. (*See generally* ECF No. 69). Plaintiff timely responded, and Defendant replied making the Motion ripe for review. As with Plaintiff's Motion, this Court begins with the federal law claims, as it holds only supplemental jurisdiction over Plaintiff's state law claims.

### 1. Procedural Due Process

Defendants claim Rover's due process rights were not violated as it was afforded a sufficient post-deprivation remedy, and moreover, its dispute is merely contractual. (*Id*. at 21). To the first point, Defendants argue the County has an important interest in maintaining the safety of roadways, so a post-deprivation breach of contract action was sufficient to satisfy due process. (*Id*. at 22). Similarly, regarding the adequacy of the post-deprivation remedy—a breach of contract suit—Defendants assert Rover does not allege, nor is there any evidence in the record to show, that such a remedy would not make Rover whole. (*Id*.). Defendants further argue that Rover mischaracterizes its claim as resulting from a formal state process, rather than a "random, unauthorized act by a state employee." (ECF No. 84 at 14).

In response, Plaintiff asserts that by restricting its right of access to and from its private property via the County's public roadways, Defendants deprived it of a property interest. (ECF

---

[13] As detailed *infra*, this Court ultimately finds Defendants are entitled to summary judgment on Plaintiff's constitutional claims and refuses to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, it will refrain from addressing Plaintiff's those remaining claims here.

No. 72 at 3 (citing *State ex rel. Merritt v. Linzell*, 163 Ohio St. 97, 126 N.E.2d 53, 54 (1955))). Secondly, Plaintiff asserts it received neither notice, nor a pre-deprivation hearing, as required under the Fourteenth Amendment. (*Id.* at 5–6). Finally, Plaintiff argues it has sufficiently shown its injury was the result of an official policy, custom or procedure, so it is not required to establish the absence of alternative remedies to succeed on its procedural due process claim. (*Id.* at 6–7). Nonetheless, says Plaintiff, the offered post-deprivation remedy is insufficient to remedy this "extreme and intrusive violation of its sacrosanct property interests." (*Id.* at 9).

This Court previously found Plaintiff was not entitled to summary judgment on this claim because the State, by making available a tort remedy that could adequately redress the loss, gave Plaintiff the process it was due under the circumstance. *See Zinermon v. Burch*, 494 U.S. 113, 130 (1990). This is particularly the case given the largely contractual nature of the interests as play as well as the extenuating emergency circumstances cited by the Defendants. Given these same conclusions, this Court finds Defendants are entitled to summary judgment on Plaintiff's procedural due process claim. Moreover, this Court is not convinced the RUMA and accompanying cease-work order constitute an "established state procedure," let alone one that itself violates due process. Accordingly, Defendants' motion for summary judgment on Plaintiff's procedural due process claim is **GRANTED**.

*2. Substantive Due Process*

Next, Defendants argue Plaintiff's substantive due process claim has no merit. They assert the fundamental right identified by Rover—the right to use public roads—is not fundamental and, nonetheless, it agreed to certain conditions to its use of the roads per the RUMA. (ECF No. 69 at 23–24). Similarly, Defendants maintain that no Defendant acted in an "arbitrary or capricious" manner. (*Id.* at 24 (citing *Upsher v. Grosse Pointe Pub. Sch. Sys.*, 285 F.3d 448, 453 (6th Cir.

2002))). To this point, Defendants assert that cease-work order was not issued lightly, but rather was the result of numerous attempts to engage Rover to repair the damaged roadway. (*Id*.). Once Rover made clear it would not supply the requested funds and the roadway continued to deteriorate, Defendant Zwick engaged the County Prosecutor to determine her rights under the RUMA. (*Id*.). When the County Prosecutor opined "the RUMA gives the County the ability to stop the companies' access to the roadways until such repairs are made" Ms. Zwick issued the cease-work order. (*Id*.). This course of events, say Defendants, illustrates that the decision to issue the cease-work order was not "arbitrary and capricious" but rather deliberate and justified. (*Id*. (citing *Stevens v. Hunt*, 646 F.2d 1168, 1170 (6th Cir. 1981))).

In response, Plaintiff argues Defendant Zwick's "arbitrary and capricious" actions, particularly in issuing the cease-work order and requiring the road be repaired before lifting the order, is precisely the type of substantive due process violation recognized in this Circuit. (ECF No. 72 at 10). Furthermore, argues Plaintiff, this arbitrary process constitutes a "well-established custom" of the Monroe County Engineer's officer when entering RUMAs with drilling and pipelines companies. (*Id*. at 11). Moreover, Plaintiff maintains this practice was applied to all oil, gas, and pipeline companies, indiscriminately punishing them all for road damage caused by one. (*Id*. at 13). For each of these reasons, Plaintiff asserts, Defendants cannot be entitled to summary judgment. (*Id*.).

Here, as with Plaintiff's procedural due process claim, this Court's previous findings are determinative. As detailed above, this Court finds nothing in Defendants' conduct to be "so brutal and offensive that [they do] not comport with traditional ideas of fair play and decency." *Lewis*, 523 U.S. at 846–47 (internal quotations omitted). Specifically, temporarily closing Rover's worksite and requiring construction workers temporarily vacate, by no means "shocks the

conscience." Moreover, the County had a legitimate reason for temporarily closing Rover's worksite—damage to its roadways from construction vehicles. Accordingly, given the foregoing analysis, Defendants' motion for summary judgment on Plaintiff's substantive due process claim is **GRANTED**.

### 3. *Unlawful Search & Seizure*

Defendants argue Rover's Fourth Amendment Search and Seizure claim fails as a matter of law. (ECF No. 69 at 15). First, Defendants maintain Plaintiff lacks standing to assert a search and seizure claim on behalf of these third-party independent contractors (*Id*. at 16). Nonetheless, Defendants assert, Plaintiff's claim fails because there was no search or seizure as defined by the Fourth Amendment. (*Id*. at 16–17). Defendants maintain Deputy Blamble and Mr. Kress did not enter Rover's construction area, but rather only stood in the parking lot. (*Id*.). They assert this parking lot is merely an "open field" and not protected by the Fourth Amendment. (*Id*. (citing *Florida v. Jardines*, 569 U.S. 1, 6 (2013))). Furthermore, Defendants argue they are entitled to summary judgment on this claim as nobody was arrested or detained. (*Id*.). They assert that in view of all the circumstances no reasonable person would have believed he or she was not free to leave the area. (*Id*. (citing *United States v. Mendenhall*, 446 U.S. 544, 553 (1980))). Lastly, even if it was a seizure, Defendants argue their actions were based on the terms of the RUMA, which Rover voluntarily entered. (ECF No. 84 at 11).

Plaintiff argues there was in fact an unlawful seizure here, as Defendants prevented their contractors from staying at a location they would otherwise have chosen to remain. (ECF No. 72 at 13 (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (6th Cir. 2005))). Moreover, says Plaintiff, by threatening to arrest and charge the workers at the site, Defendant Blamble exhibited the requisite show of force to constitute an unlawful seizure. (*Id*. at 16). To this point, Plaintiff

offers testimony from several of the workers at the site, alleging they all left the site to avoid arrest, as Defendant Blamble told them such a consequence was possible. (*Id*. at 15).

As detailed above, this Court previously found Defendants actions did not amount to an unconstitutional seizure, and as a result, Plaintiff was not entitled to summary judgment. Considering that determination, this Court finds Defendants are so entitled. There was no intentional acquisition of physical control, nor was anyone detained or arrested. Even more so, this action was supported by the "emergency circumstance" identified by the County and its interpretation of its rights under the RUMA. Setting aside Defendants' arguments on standing, this Court finds that no party could maintain a claim for unlawful seizure under these facts.

Moreover, even were Defendants' actions sufficient to constitute an unlawful seizure, it would nonetheless be a *de minimis* violation. *See Artes–Roy*, 31 F.3d at 960. Ultimately, Plaintiff's contractors—not its employees—were removed from the construction site for a very brief period, based on the County's reasonable emergency determination, and after which they received an adequate post-deprivation remedy. Given this sequence of events, as well as this Court's aforementioned determinations (*see supra* at Part III(A)(3)), Defendants' motion for summary judgment on Plaintiff's Fourth Amendment search and seizure claim is **GRANTED**.

### 4.  *Unlawful arrest/imprisonment*

Defendants argue they are entitled to summary judgment on Plaintiff's unlawful arrest/imprisonment claims because Rover cannot assert these claims on behalf of the third-party contractors working at the site when the cease-work order was issued. (ECF No. 69 at 38). Either way, say Defendants, the evidence does not support either claim. (*Id*.). Specifically, Defendants maintain nobody here was confined or restrained—the workers were asked to stop working and

they left the worksite. Moreover, say Defendants, submission to verbal direction in the absence of force or threat of force does not constitute confinement.[14] (*Id*. at 39).

Plaintiff argues, however, that these claims are valid because the circumstances were such that the alleged seizure constituted an arrest. (ECF No. 72 at 17). Specifically, Plaintiff asserts that: (1) Defendant Blamble had an intent to arrest the workers; (2) under real or pretend authority; (3) accompanied by a *constructive* seizure; and (4) the workers understood this act as such. (*Id*. (citing *State v. Roby*, 10th Dist. No. 16AP-342, 84 N.E.3d 1102, ¶ 13)). Given it has demonstrated the alleged seizure was equivalent to an arrest, and Defendants had no authority for their actions, Plaintiff maintains Defendants cannot be entitled to summary judgment on this claim. (*Id*.).

This Court has already determined there was no unlawful seizure here, let alone an arrest or detainment. (*See supra* at Part III(A)(3)–(4)). All that occurred was the state effecting a cease-work order, citing emergency concerns and its alleged rights under contract. Regardless of the scope of the contract which allegedly authorized these actions, Defendants have sufficiently shown they are entitled to summary judgment on this claim. Accordingly, Defendants' motion for summary judgment on Plaintiff's unlawful arrest/imprisonment claims is **GRANTED**.

### 5.  *Unlawful Takings*

Defendants assert a 5th Amendment takings claim "cannot be based on a contractual dispute." (ECF No. 69 at 18). They maintain it is well established that governmental interference with a contractual right does not give rise to a taking, but instead entitles a plaintiff to seek compensation for breach of contract. (*Id*.). Furthermore, Defendants state that even if there was a taking, it was neither *per se* nor for "public use." (*Id*. at 20). To the first argument, Defendants maintain there was no "permanent, physical occupation of the property," as the cease-work order

---

[14] Defendants do not substantively argue Plaintiff's false arrest claim in their reply brief. (*See generally* ECF No. 84). They do, however, assert Plaintiff contractually waived its constitutional rights under the RUMA. (*Id*. at 3–8).

was only in effect for less than a week. (*Id*.). To the second point, Defendants assert the property was not taken for public use because there was not "public burden" forced upon the community. (*Id*. (citing *Connolly v. Pension Benefit Guar. Corp.*, 475 U.S. 211, 227 (1986)). Given each of these arguments, Defendants assert they are entitled to summary judgment. (*Id*.).

In response, Plaintiff first argues its takings claim is not merely a contractual dispute. (ECF No. 72 at 18). Plaintiff maintains its right to access its property via public roadway is a fundamental property right that was unlawfully taken by Defendants. (*Id*. at 19). Moreover, says Plaintiff, this taking was for a "public use," as Defendant Zwick's sole purpose for issuing the cease-work order was to have Rover repair its public roadways. (*Id*. at 20). Ultimately, Plaintiff claims Defendants cannot be entitled to summary judgment on this claim given its right of ingress and egress to its property from public roadways was taken without just compensation for a "public use." (*Id*.).

Here again, this Court previous findings are determinative. Numerous Courts, including the Sixth Circuit, have determined "a breach of contract claim does not give rise to a § 1983 constitutional claim." *See Preschool Dev., Ltd*, 2005 WL 1038849 at * 18; *see also B & B Trucking, Inc*, 406 F.3d 766 (6th Cir. 2005); *Boston Env't Sanitation Inspectors Ass'n*, 794 F.2d at 12, 13. Ultimately, because the cease-work order is merely dispute over the scope of the RUMA, the Fifth Amendment cannot grant Plaintiff the relief it seeks. Accordingly, particularly given the foregoing analysis (*see supra* at Part III(A)(5)) Defendants' motion for summary judgment on Plaintiff's takings claim is **GRANTED**.

### 6.  *Equal Protection*

Defendants argue Plaintiff's Second Amended Complaint does not properly plead a § 1983 equal protection claim. (ECF No. 69 at 15). Specifically, Defendants assert the Second Amended Complaint alleges a claim for "Equal Protection/Due Process," but the accompanying allegations

only mention alleged procedural and substantive due process violations. (*Id.*). As they maintain there are no separate equal protection allegations, Defendants do not substantively address equal protection in their opening Motion. (*See generally id.*). They do, however, assert that to the extent Plaintiff alleges a violation of the Ohio Constitution, there is no private right of action for damages based on such a violation. (*Id.* at 38).

Plaintiff similarly does not spend any time discussing its alleged § 1983 equal protection claim in its response to Defendants' Motion. (*See generally* ECF No. 72). Plaintiff does, however, maintain that the Ohio Constitution permits equal protection and due process claims relating to a local government's regulations, policies, customs, or procedures. (*Id.* at 42). As there is no *per se* bar on equal protection claims brought under the Ohio Constitution, says Plaintiff, Defendants' argument fails as a matter of law.[15] (*Id.* at 43).

To the extent Plaintiff alleges a § 1983 equal protection claim, this Court finds it has failed to show the state has treated it differently from others similarly situated without a rational basis for doing so. *Warren*, 411 F.3d at 710 (6th Cir. 2005). Specifically, as nobody was denied access to public roads and all pipeline companies were required to sign the RUMA, Plaintiff was not treated differently from others similarly situated. Moreover, even if there was differential treatment, there was clearly a rational basis for that treatment—to ensure the integrity of the County's roads and to enforce their alleged contractual rights. As detailed above, this Court finds these two purposes rationally related to the County's interest in protecting its citizenry and its property. Accordingly, Defendants' motion for summary judgment on Plaintiff's § 1983 equal protection claim is **GRANTED**. To the extent Plaintiff is asserting an equal protection claim under

---

[15] This Court is somewhat confused by the parties' arguments here. They both address an alleged § 1983 equal protection claim in the briefing on Plaintiff's Motion for Summary Judgment, but only discuss an alleged state law equal protection claim in the briefing on Defendants' cross-motion. Moreover, Plaintiff's Second Amended Complaint only mentions equal protection twice, without any substantive allegations. (*See* ECF No. 80 at ¶¶ 71, 86).

Ohio law, in accordance with the foregoing analysis (*see supra* at Part III(C)), that claim is **REMANDED to the Monroe County Common Pleas Court** along with Plaintiff's state law contract claims.

### 7. *Monell*

Given the foregoing conclusion that Defendants have not violated any of Plaintiff's constitutional rights, the County "could not be liable under *Monell* because there was no underlying constitutional violation." *See Renz*, 2010 WL 3789563 at * 3. Specifically, by issuing the cease-work order and temporarily clearing the worksite, Defendants did not violate Plaintiff's civil rights. Moreover, there is no evidence any workers, Plaintiff's or otherwise, were barred from using public roadways. Accordingly, Defendants' motion for summary judgment on Plaintiff's *Monell* claim is **GRANTED**.

### C. State Law Claims & Supplemental Jurisdiction

It is well settled that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The two primary bases of original jurisdiction are federal question and diversity of citizenship jurisdiction. *See* 28 U.S.C. §§ 1331, 1332(a). Under the federal question jurisdiction statute, district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Here, the Court has original jurisdiction of Plaintiff's constitutional claims. 28 U.S.C. § 1331. The parties do not dispute such jurisdiction. Plaintiff's remaining claims, however, are all actions based on state contract law. (*See* ECF No. 80). Specifically, Plaintiff brings two breach of contract claims for being required to make repairs to two different Monroe County roads, as well as a claim for a declaratory judgment finding the RUMA invalid and unenforceable. (*Id*.). Over

these claims, Plaintiff argues, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.
(*Id*. at ¶ 5).

A court may exercise its supplemental jurisdiction over claims that "are so related to claims
in the action within such original jurisdiction that they form part of the same case or controversy
under." 28 U.S.C. § 1367(a). While the decision to exercise supplemental jurisdiction is
discretionary, courts may decline to hear a claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district
court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining
jurisdiction.

28 U.S.C. § 1367(c). The Sixth Circuit has consistently stated that supplemental jurisdiction is a
"doctrine of discretion, not of plaintiff's right." *James v. Hampton*, 592 F. App'x 449, 462 (6th
Cir. 2015) (citing *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003)). A district court
should balance the "interests of judicial economy and the avoidance of multiplicity of litigation
against needlessly deciding state law issues." *Id*. at 462–63 (internal quotation marks omitted).

This Court finds that three of these four factors support declining to exercise supplemental
jurisdiction. First, this Court finds Plaintiff's state law claims, particularly the request for a
declaratory judgment invalidating the RUMA, raise novel issues of state law. As the parties rightly
point out, there is little jurisprudence in federal or state law, discussing RUMAs and their
enforceability. While there are a handful of opinions from the Ohio Attorney General discussing
RUMA's generally, none squarely discusses a RUMA in this context. And, "[w]here a pendent

state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of its government, principles of federalism and comity may dictate that these questions be left for decision by the state courts." *Sanford v. Mullins*, No. 1:16-cv-1431, 2017 WL 82598, at \*4 (W.D. Mich. Jan. 10, 2017). This Court finds such circumstances exist here.

Furthermore, and as significantly, the state law claims here "substantially predominate" over Plaintiff's federal law claims. This whole case revolves around the legitimacy of the RUMA––a contract. Even the federal law claims, arose as a result of the cease-work order which was issued pursuant to the RUMA. These issues predominate and should be decided by the state court. Finally, and most significantly, this Court has dismissed all claims over which it has original jurisdiction. Given this final factor particularly, this Court declines to extend supplemental jurisdiction over Plaintiff's remaining state law claims. This case is hereby **REMANDED to the Monroe County Common Pleas Court** for the adjudication of those remaining claims.

## IV. CONCLUSION

Given the foregoing analysis, Defendants' Motion for Summary Judgment (ECF No. 69) is **GRANTED in part and DENIED in part**, while Plaintiff's Motion for Summary Judgment (ECF No. 68) is **DENIED**. This case is hereby **REMANDED to the Monroe County Common Pleas Court** for the adjudication of Plaintiff's remaining state law claims. Furthermore, given this disposition, Defendants' Motion to Dismiss the Second Amended Complaint (ECF No. 81) as well as Plaintiff's Motion to Strike[16] (ECF No. 83) are **DENIED as moot**.

---

[16] In this Motion, Plaintiff seeks to strike inadmissible report, opinions, and testimony of purported roadway engineering expert Amy Zwick from Defendants' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment. (*See generally* ECF No. 83). In evaluating both parties' Motions, this Court did consider some of Ms. Zwick's testimony, but this testimony was merely related to her involvement in this case as a named defendant. This Court did not consider her alleged expert testimony, as that was strictly related to Plaintiff's state law claims. Accordingly, Plaintiff may reassert this Motion on remand.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: March 24, 2022**