**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: November 30, 2022

Mr. Gregory D. Brunton
Mr. Daniel John Hyzak I
Mr. Bruce Allen Moore
Gordon, Rees, Scully & Mansukhani
41 S. High Street
Suite 2495
Columbus, OH 43215

Mr. John Stephen Teetor
Mr. Andrew N. Yosowitz
Teetor Westfall
200 E. Campus View Boulevard
Suite 200
Columbus, OH 43235

Re: Case No. 22-3370*, Rover Pipeline LLC v. Amy Zwick, et al*
Originating Case No. : 2:19-cv-04698

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0486n.06

Case No. 22-3370

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Nov 30, 2022
DEBORAH S. HUNT, Clerk

ROVER PIPELINE LLC,

Plaintiff-Appellant,

v.

AMY M. ZWICK, Monroe County, Ohio Engineer, in her official capacity, et al.,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

O P I N I O N

Before: CLAY, GIBBONS, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff-Appellant Rover Pipeline LLC ("Rover") contracted with Defendant-Appellee Monroe County, Ohio, to access county roads with its equipment and vehicles. When the county engineer believed Rover violated that contract by excessively damaging the roads, she issued a cease-work order. Rover alleges that the issuance and enforcement of that order violated its constitutional rights. Rover also appeals the district court's dismissal of its state-law claims without prejudice after declining to exercise supplemental jurisdiction. At bottom, this is a breach of contract dispute that has spawned numerous complicated constitutional challenges, none of which has merit. We affirm.

I.

Rover is an interstate natural gas pipeline company. The issues that give rise to this suit occurred during the construction of an approximately 4.2-billion-dollar pipeline project traversing multiple states and counties, including Monroe County, Ohio.

Natural gas projects often require the use of heavy construction vehicles and equipment, which can damage roads. Rover's representatives met with Defendant-Appellee Monroe County Engineer's Department in an attempt to obtain hauling and crossing permits to enable it to use the roads. Rover alleges that the county engineer refused to issue permits unless Rover signed the County's Road Use Maintenance Agreement. A Road Use Maintenance Agreement is an agreement between a local government and private party that provides for road repair and maintenance when the private party damages a political subdivision's roads.

At the time of the events in this case, Monroe County had entered into nearly 180 road use maintenance agreements with other private companies, and Rover had entered road use maintenance agreements with "dozens" of cities, counties, and townships for this pipeline project. Additionally, Rover submitted a Residential Access and Traffic Mitigation Plan as part of its application to the Federal Energy Regulatory Commission to begin the pipeline project, in which Rover agreed to "enter into Road Use and Management Agreements with all state, county, and municipal regulatory entities to ensure that the roadways utilized during construction of the Project are returned to an as good as or better condition than they were prior to construction." Nonetheless, Rover maintains that it entered the Road Use Maintenance Agreement with Monroe County under duress because it had to keep the pipeline project on schedule.

Months after the parties signed the Road Use Maintenance Agreement, Defendant-Appellee County Engineer Amy Zwick determined that four roads were excessively damaged, due

in part to Rover's use.[1] She discussed the damaged roads with Rover. Monroe County Oil and Gas Coordinator and Highway Supervisor, Defendant-Appellee Brian Kress, even drove a Rover representative through the county to examine the roads. According to Zwick, there was "a lot of talk, but little action."

On October 27, 2017, Kress emailed Rover to let it know that one of the roads had worsened to emergency conditions. A few days later, Zwick emailed Rover an Emergency Repair Notification, and sought legal advice about the situation from the Monroe County Prosecuting Attorney. The Road Use Maintenance Agreement provides in relevant part:

> If during the pipeline construction, road damage becomes excessive in nature, as reasonably determined by the County or Township, the applicant will make additional improvements to strengthen the road base and surface immediately upon written notice from the County Engineer or Township Trustees. All work accessed by said road will cease until repairs are done to correct the problem.

R. 80-2, PID 5079. The Prosecuting Attorney advised Zwick that under the agreement "the County has the right to, and should, immediately prevent the companies' access to the affected roadways." R. 69-1, PID 3427. Zwick then emailed a cease-work letter to Rover.

The next day, Zwick sent Kress and Defendant-Appellee Monroe County Sheriff's Deputy Russell Blamble to four of Rover's worksites with a copy of the cease-work order. Deputy Blamble was told he was there to make sure Kress did not get hurt during the process, and to keep the peace. The two visited the four designated work sites, two of which were unoccupied.

At the Ozark Eddy Bridge site, Kress told a foreman that the workers needed to leave the site. Deputy Blamble reports that he did not speak with anyone directly, but that he did tell everyone generally that they needed to "move along" because things were taking too long.

---

[1] Rover and two other companies, EQT Corporation and TransCanada Corporation, were all held jointly liable for the damage to the road.

At the next stop, the Boltz Hill Road site, Kress similarly shared the cease-work news in an attempt to clear the site**.** At that site, Deputy Blamble also reports that, when asked by workers what would happen if they did not leave, he responded that they risked a charge of disorderly conduct, but that the ultimate decision on whether they would be charged would be left with his supervisor. One of the workers recalls the Boltz Hill Road site events differently, and testified that at the site:

> [Deputy Blamble] just told me that we had to vacate the right-of-way; that someone hadn't secured the permits or a permit had expired or something and that we could not be there. We had to vacate the premises, and if he caught any of us on that road again that day, he was going to arrest us.

Rager Dep., R. 62, PID 1291. Ultimately the site was cleared and no one was arrested.

Rover filed suit and a motion for a temporary restraining order (TRO) the day after Kress and Deputy Blamble visited the construction sites. The district court granted the TRO four days later, enjoining Appellees from "interfering with or otherwise obstructing Rover, its agents, contractors and/or representatives from accessing and/or driving on the Public Roads, and . . . from forcibly removing, or otherwise causing to be removed, Rover from its own private property and/or barring Rover's access to the same." Then the parties settled that action and filed a stipulation of dismissal without prejudice. But, following that dismissal, Appellees moved for a TRO, alleging that Rover never furnished agreed upon funds**.** The district court granted Appellees' TRO.

Rover then filed the suit giving rise to this appeal. Rover alleges that Appellees violated its constitutional rights and the rights of its workers and breached the Road Use Maintenance Agreement. Both parties filed motions for summary judgment. The district court denied Rover's motion for summary judgment and granted in part Appellees' motion. The district court denied Appellees' motion insofar as it required ruling on the breach of contract claims, as it chose not to exercise supplemental jurisdiction over those claims, and instead dismissed those claims without

prejudice. Appellees had numerous qualified immunity arguments that the district court chose not to address because it found "substantial other grounds to grant [Appellees] summary judgment." R. 94, PID 5369. The district court similarly "[set] aside [Appellees'] arguments on standing." *Id.* at 5388. Rover appealed.

II.

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-movant. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate when there are no genuine issues of material fact and a party must prevail as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). Because the parties have filed cross-motions for summary judgment, we "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Appoloni v. United States*, 450 F.3d 185, 189 (6th Cir. 2006) (citing *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir.2003)).

Before turning to address each of Rover's claims, a note about standing is warranted. For its Fourth Amendment, false arrest, and Equal Protection claims,[2] Rover details injury suffered by the violation of the *workers*' rights, not its own. It was Rover's workers, not Rover itself, who were allegedly seized in violation of the Fourth Amendment/subjected to false arrest when they were forced to leave the property by the deputy. It was Rover's workers who were allegedly discriminated against in violation of equal protection when they were barred from using the public

[2] Appellees explicitly challenge only the prudential standing of Rover to bring its Fourth Amendment claim. But that argument applies with equal force to these other claims, which are claims of its workers, not Rover itself. While there is a circuit split on this issue, *see Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022) (detailing split), under the rule of this circuit we may address prudential standing issues sua sponte. *See Fair Elections Ohio v. Husted*, 770 F.3d 456, 461 n.2 (6th Cir. 2014). We see no reason not to do so here, as the issue is already briefed regarding the Fourth Amendment claim and there are no material differences between that claim and the rest of the listed claims in terms of the third-party standing analysis.

roads to travel to Rover, not Rover as an entity. In its Reply Brief, Rover attempted to clarify that the civil rights claims are its own, "as the possessor and titleholder of the affected private property and commercial construction sites," not its employees'. Reply Br. at 5. But Rover's Fourth Amendment seizure, false arrest, [3] and Equal Protection[4] claims are not related to property rights. They are individual rights belonging to the employees. And Rover has not pointed to any authority stating that an employer may assert the individual constitutional claims/rights of its employees as its own claims, rather than via third-party standing.

Rover also argues that it *can* bring claims of third parties, specifically its workers who are its "guests and business licensees." *Id.* at 8. This is problematic, because a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Section 1983 specifically grants a cause of action "to the party injured," *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984) (quoting 42 U.S.C. § 1983), and ordinarily standing does not exist to vindicate the constitutional rights of a third-party. *Smith v. Jefferson Cnty. Bd. of Sch. Comm'rs*, 641 F.3d 197, 208 (6th Cir. 2011) (en banc). Third party standing is limited to cases where (1) "the party asserting the right has a 'close' relationship with the person who possesses the right" and (2) "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski v. Tesmer*, 543 U.S. 125, 130

[3] Rover does not allege that the officer's entry onto its land was an unconstitutional search or seizure of its land/property, only an unconstitutional seizure/false arrest of its employees. And employees, of course, are not property, and Rover does not argue that they are. *Cf. Seale v. Peacock*, 32 F.4th 1011, 1028 (10th Cir. 2022) ("[T]o the extent [the plaintiff] argues he lost clients and employees, people are not property or things that can be the subject of a civil theft claim." (citing *Property*, BLACK'S LAW DICTIONARY (11th ed. 2019))). Rover speaks only in terms of the employees' individual Fourth Amendment rights to not be "removed from Rover's private property by a show of authority . . . against their will." Appellant's Br. at 30. Thus, there is no sound argument that Rover may assert the employees' individual constitutional claims as its own simply because of the employer-employee relationship.

[4] Rover argues that its "employees, agents, representatives, contractors, and workers were unlawfully barred from using the public roadways of the State of Ohio to travel to their place of employment by Appellees" in violation of "*their* right to equal protection under the law." Appellant's Br. at 35, 37 (emphasis added).

(2004) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991). The Supreme Court has been reluctant to recognize third-party standing claims outside of the First Amendment context and contexts where "enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights," *id.* at 130 (quoting *Warth*, 422 U.S. at 510), neither of which is relevant here.

We assume without deciding that Rover has a "close" relationship with its workers. *Cf. id.* at 139 (Ginsburg, J., dissenting) (explaining that the Court has found a close relationship "when nothing more than a buyer-seller connection was at stake")[5]; *but see Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 810 (11th Cir. 1993) ("In cases allowing third-party standing, the relationship between the party asserting the right and the third party has been characterized by a strong identity of interests which is absent in an employer/employee relationship.").

But the hindrance prong defeats Rover's argument. Rover relies solely on the allegation that the workers who were allegedly unconstitutionally seized/subjected to false arrest are financially disincentivized from suing themselves due to the "absence of damages and the costs of vindicating their rights." Reply Br. at 8–9. Specifically, Rover points to the fact that, due to contractual obligations, those workers were paid anyway, despite being forced to leave their jobsite. In other words, those workers "may actually have obtained an inadvertent pecuniary benefit from Appellees' unlawful actions because they were paid for more days than it would have otherwise taken to complete their work had Appellees' [sic] not detained and removed them from Rover's private property and construction sites." *Id.* at 10. But Rover points to no affirmative

[5] However, we note that this statement comes from a case involving direct regulation of the litigant, a posture in which, as stated, the Supreme Court has been much more receptive to third-party standing. *See Kowalski*, 543 U.S. at 130. This is not the posture of this case.

obstacle preventing the workers from suing on their own behalf, and none is apparent from the record. Typically, third-party standing has been found appropriate in the face of concerns such as "deterrence from filing suit due to privacy concerns, imminent mootness of a case, or systemic practical challenges to pursuing one's own rights." *Moody v. Mich. Gaming Control Board*, 847 F.3d 399, 402 (6th Cir. 2017). There is no evidence that the workers' claims involve any of those issues. *See Smith*, 641 F.3d at 209.

The cases in which the Supreme Court has recognized third-party standing are thus vastly different from this one and involve more than just potential financial disincentive. In *Singleton v. Wulff*, doctors challenged the exclusion of abortions from Medicaid coverage; the third parties whose rights were actually affected by that restriction (pregnant women) faced deterrents to suit including a desire for privacy regarding such a sensitive medical procedure and mootness due to the end of pregnancy. 428 U.S. 106, 117 (1976). The issue was much the same in *Eisenstadt v. Baird*, which involved a contraceptive seller's challenge to a restriction on contraceptives. 405 U.S. 438, 445–46 (1972). The seller was allowed to assert the rights of potential contraceptive users, in large part because "[t]he rights of husband and wife . . . are likely to be diluted or adversely affected unless those rights are considered in a suit involving those who have this kind of confidential relation to them," and because under the challenged restriction the users were "not themselves subject to prosecution and, to that extent, [were] denied a forum in which to assert their own rights." *Id.* at 446. And in *Powers*, the Supreme Court found that criminal defendants have third party standing to bring potential jurors' equal protection claims when race-based peremptory strikes are made. 499 U.S. at 414. The Court explained that this was proper because:

> The barriers to a suit by an excluded juror are daunting. Potential jurors are not parties to the jury selection process and have no opportunity to be heard at the time of their exclusion. Nor can excluded jurors easily obtain declaratory or injunctive relief when discrimination occurs through an individual prosecutor's exercise of

> peremptory challenges . . . . And, there exist considerable practical barriers to suit by the excluded juror because of the small financial stake involved and the economic burdens of litigation . . . . The reality is that a juror dismissed because of race probably will leave the courtroom possessing little incentive to set in motion the arduous process needed to vindicate his own rights.

*Id.* at 414–15 (citations omitted).

Rover points us to no case where a party was allowed to assert a third-party claim on the sole basis of financial disincentive of the third party to bring suit. Although *Powers* did mention lack of financial incentive as a reason why improperly excluded jurors are hindered in bringing suit, it was merely one in a long list of factors that together culminated in the conclusion that excluded jurors faced so many barriers that third-party suits were appropriate. *See id.*; *see also Smith*, 641 F.3d at 209 (indicating that *Powers* concerned "systemic practical challenges to filing suit").[6] But financial disincentive alone appears far less of a hindrance than other hindrances found insufficient to justify third-party standing. *See, e.g.*, *Kowalski*, 543 U.S. at 132–33 (indigent litigants needing to proceed pro se face an insufficient obstacle). Many claims do not involve great financial compensation in comparison to the costs of litigation, but litigants bring them anyway—ostensibly to vindicate their rights. To allow mere financial disincentive—especially where, as here, there is no indication that bringing suit would be inordinately difficult or expensive—to justify third-party standing would open the floodgates where the Supreme Court has been careful to limit access. *See Crawford v. United States Dep't of the Treasury*, 868 F.3d 438, 455 (6th Cir. 2017) (noting that the third-party standing exception is "rare").

Further, the financial disincentive issue here is different than the one at issue in *Powers*, where the disincentive stemmed solely from the fact that the suits, due to their complicated context,

---

[6] The same is true for the case cited by Rover, *United States v. De Gross*, 960 F.2d 1433, 1437 (9th Cir.1992), which involved "numerous procedural difficulties" such that the third party, "the improperly excluded juror[,] effectively lacks a remedy for his unconstitutional exclusion from the trial."

would likely be expensive to bring and result in very little damages. Here, Rover makes no argument about this suit being inherently prohibitively expensive, and its financial incentive argument revolves around the fact that the workers may have actually obtained a financial benefit due to the alleged violation of their rights.

As the Supreme Court has noted, "third parties themselves usually will be the best proponents of their own rights," and it simply "may be that in fact the holders of those rights . . . do not wish to assert them . . . ." *Singleton*, 428 U.S. at 113–14. The balance between financial gain and vindication of one's rights, without more, is a personal choice for the right-holder to make. *Cf. Friedman v. Harold*, 638 F.2d 262, 265–66 (1st Cir. 1981) ("The bankrupt wife whose alleged rights are being asserted by the trustee is specifically asking this court that those 'rights' not be granted to her. She not only does not wish to assert any rights she may have regarding discrimination on the basis of her sex, but she could be economically injured if the challenged aspect of the tenancy by the entirety were struck down as invalid. This is a classic example of the Supreme Court's principle preventing a litigant from asserting the third-party rights of those who do not want such rights asserted."); *Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1689 (2017) (indicating that mere "disinterest" is not a sufficient hindrance). The kind of relatively minor financial disincentive alleged by Rover is simply not a "genuine obstacle," *Singleton*, 428 U.S. at 116, to bringing a claim such that third-party standing—and potentially overriding the desires of the workers regarding their own rights—is warranted. Rover therefore does not have standing to bring the Fourth Amendment, false arrest, or Equal Protection claims on behalf of the workers whose rights were allegedly violated.

Having addressed those standing issues, we move to each of *Rover's* remaining claims in turn.

**A. Procedural Due Process**

We turn first to Rover's procedural due process claim. The Fourteenth Amendment provides, in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. This Due Process Clause generally requires notice and an opportunity to be heard before depriving a person of a property or liberty interest, but it is "flexible and calls for such procedural protections as the particular situation demands." *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 740–41 (6th Cir. 2015) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). To determine whether the right has been violated, courts first consider whether a plaintiff was deprived of a protected property or liberty interest. *Warren v. City of Athens, Ohio*, 411 F.3d 697, 708 (6th Cir. 2005) (citing *Hamilton v. Myers*, 281 F.3d 520, 529 (6th Cir. 2002)). If the plaintiff was, courts consider whether the deprivation violated due process rights. *Id.*

Rover alleges that it had a protected interest in owning and peacefully enjoying property, in moving freely in public spaces, and in the freedom to work and pursue economic opportunities. Appellant's Br. at 15. But even assuming Rover has an interest in each of these things, Rover repeatedly overlooks the fact that it entered into a contract restricting those interests in certain circumstances. Zwick and Kress believed that the road conditions warranted a cease-work order pursuant to the contract. And "[a] plaintiff may not bring a § 1983 action 'when the deprivation is a simple breach of contract and there is [an] adequate state breach of contract action available as a remedy.'" *See Machisa v. Columbus City Bd. of Educ.*, 563 F. App'x 458, 462–63 (6th Cir. 2014); *see also Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015) (explaining

procedural due process requirements are "fluid and fact dependent" (citation omitted)). Because Ohio provides for a breach of contract claim, "that process is due process" in this case. *Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 197 (2001).

We acknowledge, however, that the action did not stop with the *issuance* of the cease-work order, because Rover alleges that Deputy Blamble enforced that order by threatening to arrest the workers if they drove on the at-issue roads. Assuming that Deputy Blamble did in fact threaten to arrest the workers, as we must at this stage, we still find no procedural due process violation, because such actions were "random and unauthorized" and there are available state remedies to compensate Rover. *See Warren*, 411 F.3d at 709–10 (citation omitted); *see also Daily Servs., LLC v. Valentino*, 756 F.3d 893, 907 (6th Cir. 2014).

Rover itself alleges that Deputy Blamble lacked authority to threaten arrest. Reply Br. at 25. And there is no evidence that any deputy, let alone Deputy Blamble, has ever threatened arrest in a similar situation. Finally, Rover has not alleged, let alone shown, inadequate state remedies to compensate it for any abuse of process that Deputy Blamble's actions may represent. *Cf. GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 367 (7th Cir. 2019) (finding no likelihood of success on due process claim when a city attorney showed up at a worksite and told workers they would be arrested if they did not leave). Thus, summary judgment was properly granted.

**B. Substantive Due Process**

Rover also alleges that Appellees violated its substantive due process rights by requiring it to sign the Road Use Maintenance Agreement before it could begin its work and then creating an arbitrary procedure wherein the county ignored the causation requirement of the agreement and

shut down work based on only a presumption that Rover damaged the roads, rather than the other companies also working on the pipeline. Appellant's Br. at 22–23.[7]

The Due Process Clause "contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). To establish a violation of this substantive due process right, a plaintiff must allege: (1) a constitutionally protected property interest that (2) was deprived by arbitrary and capricious state action. *MSI Regency, Ltd. v. Jackson*, 433 F. App'x 420, 429 (6th Cir. 2011). This second requirement is that the state's action "either lacks a rational basis or is willful and unreasoning." *GMS Dev. Holding Co. 3, LLC v. Bloomfield Twp.*, 740 F. App'x 495, 496–97 (6th Cir. 2018) (quotation and citations omitted).

As a preliminary matter, a "state-created contractual right is not a proper subject of federal protection under the doctrine of substantive due process." *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. App'x 826, 834 (6th Cir. 2009) (quotation and citations omitted). But even if we assume that there was a constitutionally protected property interest outside of the interest created by the contract, Rover's claim fails, because Rover has not established that the state's action was arbitrary and capricious.

The county determined that the road damage was excessive and accordingly shut down Rover's work. This action was contemplated by the contract, which seemingly left the determination to the county's discretion. *See* Road Use Maintenance Agreement, R. 80-2, PID 5079 ("If during the pipeline construction, road damage becomes excessive in nature, *as reasonably determined by the County or Township*, the applicant will make additional

[7] Rover did not argue that Deputy Blamble's actions constituted a substantive due process violation.

improvements to strengthen the road base and surface immediately upon written notice from the County Engineer or Township Trustees." (emphasis added)); *see also Systematic Recycling LLC v. City of Detroit*, 635 F. App'x 175, 183 (6th Cir. 2015) ("Non-renewal of the HCA was a result, moreover, that was expressly contemplated by the terms of the contract itself, which allowed for the possibility that the city would not renew it. It does not 'shock the conscience' for Detroit to do something that the contract between the parties had previously contemplated."). This does not rise to the level of a substantive due process violation. *Cf. GMS Dev. Holding Co. 3, LLC*, 740 F. App'x at 497 ("Local governments make that sort of judgment every day, and nothing about the Township's reasoning here allows us to deem its decision constitutionally arbitrary. This is simply a dispute about which the federal Constitution has nothing to do." (internal citation omitted)); *see also Hussein v. City of Perrysburg*, 617 F.3d 828, 833 (6th Cir. 2010) ("The asphalt driveway incident did not implicate specific constitutional guarantees, denial of a driveway does not shock the conscience, and an asphalt driveway is not an interest so rooted in the traditions and conscience of our people as to be fundamental.").

Rover pushes back, arguing that the actions were arbitrary because the county ignored the "causation" requirement of the contract. Appellant's Br. at 22–23. Further, Rover disagrees with the characterization of the road damages as "excessive" as required by the contract. *Id.* But these are breach of contract arguments. The district court therefore did not err in rejecting Rover's substantive due process claim.

**C. Taking**

Rover alleges that Appellees violated its right to access its property by public roadways, which amounted to "deprivation of sacrosanct property rights by a state actor without just compensation." Appellant's Br. at 32.

The Fifth Amendment's Takings Clause, applicable to states through the Fourteenth Amendment, prohibits taking "private property . . . for public use, without just compensation." U.S. Const. amend. V; *Palazzolo v. Rhode Island*, 533 U.S. 606, 617 (2001).

Again, Rover's arguments repeatedly overlook the fact that the cease-work order was issued pursuant to a contract, and the right to use the property at issue was granted by the contract. As such, the proper remedy lies in a breach of contract suit. *See Laborers' Int'l Union of N. Am., Loc. 860 v. Neff*, 29 F.4th 325, 335 (6th Cir. 2022) ("But we have not found a case, as an initial matter, in which a government official merely breached a contract and a cognizable Takings Clause claim arose from the breach."); *B & B Trucking, Inc. v. U.S. Postal Serv.*, 406 F.3d 766, 769 (6th Cir. 2005) ("Additionally, if the truckers contend correctly that the contracts do not validly restrict their right to control their fuel supply, and USPS nevertheless abridged that right, then the proper recourse would be a breach-of-contract claim, not a takings claim."). The district court properly granted Appellees summary judgment on Rover's takings claim.

**D. *Monell* Claim**

As Rover has failed to establish a constitutional violation, its *Monell* claim also fails. *See McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 471 (6th Cir. 2006); *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000) ("Nevertheless, our conclusion that no officer-defendant had deprived the plaintiff of any constitutional right a fortiori defeats the claim against the County as well.").

**E. State Law Claims**

Finally, Rover argues that the district court erred by declining to exercise supplemental jurisdiction over its state law claims. We review a district court's decision to decline to exercise supplemental jurisdiction over state law claims for abuse of discretion. *Veneklase v. Bridgewater*

*Condos, L.C.*, 670 F.3d 705, 709 (6th Cir. 2012) (citing *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010)). We reverse only if "we are left with the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Id.* (quotation omitted).

If a district court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). As such, we have explained that "declining to exercise supplemental jurisdiction over an action with no remaining federal claims is not an abuse of discretion." *Southard v. Newcomb Oil Co., LLC*, 7 F.4th 451, 453 (6th Cir. 2021). That is especially true in this case, where the state breach of contract outcome could have important local consequences. *See Oberer Land Devs. Ltd. v. Sugarcreek Twp., Ohio*, No. 21-3834, 2022 WL 1773722, at *6 (6th Cir. June 1, 2022). Accordingly, we affirm the district court's decision not to retain jurisdiction over Rover's state law claims.

III.

For these reasons, we AFFIRM the district court's judgment.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-3370

**FILED**
Nov 30, 2022
DEBORAH S. HUNT, Clerk

ROVER PIPELINE LLC,

Plaintiff - Appellant,

v.

AMY M. ZWICK, Monroe County, Ohio Engineer, in her official capacity, et al.,

Defendants - Appellees.

Before: CLAY, GIBBONS, and MCKEAGUE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk